Ex. C-1
11-1-16



U.S. Department of Justice

*United States Attorney*
*District of New Jersey*

PAUL J. FISHMAN
United States Attorney

*Diana Vondra Carrig*
*Assistant United States Attorney*

CAMDEN FEDERAL BUILDING & U.S. COURTHOUSE   856/757-5026
401 Market Street, 4th Floor                 Fax: 856/968-4917
Post Office Box 2098                Direct Dial: 856/968-4927
Camden NJ  08101-2098

November 1, 2016

J. Michael Farrell, Esquire
Farrell Duffy Trial Lawyers
718 Arch Street, 402N
Philadelphia, PA 19106

    Re:    <u>Plea Agreement with Toye Tutis</u>, Crim. No. 14-699 (JBS)

Dear Mr. Farrell:

    This letter sets forth the plea agreement between your client, Toye Tutis, and the United States Attorney for the District of New Jersey ("this Office"). This plea agreement supersedes all prior plea offers and will expire on Tuesday, November 1, at 3:15 p.m.

<u>Charges</u>

    Conditioned on the understandings specified below, this Office will accept a guilty plea from Toye Tutis to (1) Count 1 of the Second Superseding Indictment, Criminal No. 14-699 (JBS) (hereinafter "Indictment"), which charges your client with conspiring with others to distribute and possess with intent to distribute more than 5 kilograms of cocaine, more than 280 grams of cocaine base, that is, crack cocaine, and more than one kilogram of heroin, in violation of 21 U.S.C. § 846; and (2) Count 13 of the Indictment, which charges your client with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) . If Toye Tutis enters a guilty plea and is sentenced on these charges, and otherwise fully complies with all of the terms of this agreement, this Office will not initiate any further criminal charges against Toye Tutis for conspiring with Kareem Taylor, Phillip Horton, Ivan Cuellar Naranjo, Kabaka Atiba, Tozine Tiller and others to distribute and possess with intent to distribute between 150 to 450 kilograms of cocaine and approximately 26 kilograms of heroin from in or about January 2010 through on or about December 11, 2014 in Atlantic City and elsewhere, for laundering proceeds from that drug trafficking conspiracy through numerous bank accounts, properties and businesses during the same time period, and for his unlawful possession of the three firearms and ammunition on December 11, 2014 as charged in Counts 26 and 27 of the Indictment. The protection provided by the preceding sentence does not extend to any acts of violence committed by Toye Tutis or anyone else. In addition, if Toye Tutis fully complies with all of the terms of this agreement, at the time of sentencing in this matter, this Office will move to dismiss Counts

1

7–9 and 21– 27 of the Indictment against him. However, in the event that a guilty plea in this matter is not entered for any reason or the judgment of conviction entered as a result of this guilty plea does not remain in full force and effect, defendant agrees that any dismissed charges and any other charges that are not time-barred by the applicable statute of limitations on the date this agreement is signed by Toye Tutis may be commenced against him, notwithstanding the expiration of the limitations period after Toye Tutis signs the agreement.

Conditional Plea

Pursuant to Federal Rule of Criminal Procedure 11(a)(2), the parties agree that, notwithstanding any other provision of this agreement, Toye Tutis may withdraw his guilty plea if he appeals the denial of a suppression motion filed by Toye Tutis on the grounds specified in Schedule A, paragraph 9 of this agreement and prevails on that appeal. The parties further agree that there shall be no other circumstances under which Toye Tutis may withdraw his guilty plea.

Sentencing

Count 1: The violation of 21 U.S.C. § 846 to which Toye Tutis agrees to plead guilty carries a statutory maximum prison sentence of life, a statutory minimum prison sentence of ten years' imprisonment, and a statutory maximum fine equal to the greatest of: (1) $10,000,000 or (2) twice the gross profits or other proceeds to Toye Tutis.

Count 13: The violation of 18 U.S.C. § 1956(h) to which Toye Tutis agrees to plead guilty carries a statutory maximum prison sentence of 20 years and a statutory maximum fine equal to the greatest of: (1) $500,000, or (2) twice the value of the property involved in the financial transactions, whichever is greater. Fines imposed by the sentencing judge may be subject to the payment of interest.

The sentence to be imposed upon Toye Tutis is within the sole discretion of the sentencing judge, subject to the provisions of the Sentencing Reform Act, 18 U.S.C. § 3551-3742, and the sentencing judge's consideration of the United States Sentencing Guidelines. The United States Sentencing Guidelines are advisory, not mandatory. The sentencing judge may impose any reasonable sentence up to and including the statutory maximum term of imprisonment and the maximum statutory fine. This Office cannot and does not make any representation or promise as to what guideline range may be found by the sentencing judge, or as to what sentence Toye Tutis ultimately will receive.

Further, in addition to imposing any other penalty on Toye Tutis, the sentencing judge: (1) will order Toye Tutis to pay an assessment of $100 per count pursuant to 18 U.S.C. § 3013 (for a total of $200), which assessment must be paid by the date of sentencing; (2) may order Toye Tutis to pay restitution pursuant to 18 U.S.C. §§ 3663 et seq.; (3) may order Toye Tutis, pursuant to 18 U.S.C. § 3555, to give notice to any victims of his offense; (4) must order forfeiture, pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 982(a)(1); (5) may deny Toye Tutis certain statutorily defined benefits, pursuant to 21 U.S.C. §§ 862 and 862a; and (6) pursuant to 21 U.S.C. § 841, must require Toye Tutis to serve a term of supervised release of at least 5 years, which will begin at the expiration of any term of imprisonment imposed. Should Toye Tutis be

placed on a term of supervised release and subsequently violate any of the conditions of supervised release before the expiration of its term, Toye Tutis may be sentenced to not more than 5 years' imprisonment in addition to any prison term previously imposed, regardless of the statutory maximum term of imprisonment set forth above and without credit for time previously served on post-release supervision, and may be sentenced to an additional term of supervised release.[1]

### Rights of This Office Regarding Sentencing

Except as otherwise provided in this agreement, this Office reserves its right to take any position with respect to the appropriate sentence to be imposed on Toye Tutis by the sentencing judge, to correct any misstatements relating to the sentencing proceedings, and to provide the sentencing judge and the United States Probation Office all law and information relevant to sentencing, favorable or otherwise. In addition, this Office may inform the sentencing judge and the United States Probation Office of: (1) this agreement; and (2) the full nature and extent of Toye Tutis's activities and relevant conduct with respect to this case.

### Stipulations

This Office and Toye Tutis agree to stipulate at sentencing to the statements set forth in the attached Schedule A, which hereby is made a part of this plea agreement. This agreement to stipulate, however, cannot and does not bind the sentencing judge, who may make independent factual findings and may reject any or all of the stipulations entered into by the parties. To the extent that the parties do not stipulate to a particular fact or legal conclusion, each reserves the right to argue the existence of and the effect of any such fact or conclusion upon the sentence. Moreover, this agreement to stipulate on the part of this Office is based on the information and evidence that this Office possesses as of the date of this agreement. Thus, if this Office obtains or receives additional evidence or information prior to sentencing that it determines to be credible and to be materially in conflict with any stipulation in the attached Schedule A, this Office shall not be bound by any such stipulation. A determination that any stipulation is not binding shall not release either this Office or Toye Tutis from any other portion of this agreement, including any other stipulation. If the sentencing court rejects a stipulation, both parties reserve the right to argue on appeal or at post-sentencing proceedings that the sentencing court was within its discretion and authority to do so. These stipulations do not restrict the Government's right to respond to questions from the Court and to correct misinformation that has been provided to the Court.

---

[1] For the violation of 18 U.S.C. § 1956(h) to which Toye Tutis agrees to plead guilty, pursuant to 18 U.S.C. § 3583, the Court may require him to serve a term of supervised release of not more than 3 years, which will begin at the expiration of any term of imprisonment imposed. Toye Tutis may be sentenced to not more than 2 years' imprisonment for a violation of such supervised release.

### Waiver of Appeal and Post-Sentencing Rights

As set forth in Schedule A, this Office and Toye Tutis waive certain rights to file an appeal, collateral attack, writ, or motion after sentencing, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255.

### Forfeiture

Toye Tutis represents that some of the below listed property is titled in the names of various entities owned and/or controlled by Jazmin Vega and/or Toye Tutis, including but not limited to Ta'Ja Construction, LLC, Ta'Ja Construction I, LLC, Ta'Ja Real Estate Investors LLC, Integrity Heating and Cooling, Inc., and Dave's by Ta'Ja, LLC (hereinafter collectively "the Tutis/Vega Entities"). Toye Tutis further represents and acknowledges that as of the date of this agreement, the ownership interests in Ta'Ja Real Estate Investors LLC are as follows: Toye Tutis, 25%, Amanda Tutis, 35%, and Kyle E. McHugh, 40%. The Government reserves the right to pursue discovery in aid of forfeiture and sentencing, including but not limited to the issues of these ownership interests in Ta'Ja Real Estate Investors LLC, any other claimed partial or different ownership interests in any of the entities named in this paragraph and/or any of the property listed below, and any sales, transfers, or other disposition of ownership interests in any of those entities or property listed below. Toye Tutis further represents that he will timely take all action necessary to effectuate the forfeiture of the below listed assets and properties, including by personal and corporate action.

As part of his acceptance of responsibility, Toye Tutis agrees to forfeit to the United States: (1) pursuant to 21 U.S.C. § 853, any and all property constituting or derived from any proceeds obtained directly or indirectly as a result of the offense charged in Counts 1 of the Indictment, and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of such offense; and (2) pursuant to 18 U.S.C. § 982(a)(1), all property involved in, or traceable to, a violation of 18 U.S.C. § 1956, as charged in Count 13 of the Indictment. Such property includes, but is not limited to, the following:

> All of the defendant Toye Tutis's right, title and interest, along with all right title and interest belonging to the Tutis/Vega Entities, in the property listed below (the "Specific Property"), which Toye Tutis admits has the requisite nexus to the controlled substance offense charged in Count 1 of the Indictment and/or the money laundering offense charged in Count 13 of the Indictment, and therefore is forfeitable to the United States of America pursuant to 21 U.S.C. § 853 and/or 18 U.S.C. § 982(a)(1):

**1. BANK ACCOUNTS:**

    a)    $11,394.24 seized from account number xxxx-xxxx-3115 in the name of Ta'Ja Construction I, LLC, located at Bank of America;

    b)    $13,546.19 seized from account number xxxx-xxxx-3102 in the name of Ta'Ja Real Estate Investors LLC, located at Bank of America; and

    c)    $3,350.86 seized from account number xxxx-xxxx-3128 in the name of Integrity Heating and Cooling Inc., located at Bank of America;

## 2. REAL PROPERTY:

    a)    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 1011 Arctic Avenue, Atlantic City, New Jersey 08401, more particularly described as: Block 314, Lot 19 on the tax map of the City of Atlantic City, County of Atlantic, State of New Jersey;

    b)    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 1929 Blaine Avenue, Atlantic City, New Jersey 08401, more particularly described as: Block 493, Lot 2 on the tax map of the City of Atlantic City, County of Atlantic, State of New Jersey;

    c)    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 101 West Park Avenue, Pleasantville, New Jersey 08232, more particularly described as: Block 39 Lot 27 on the tax map of the City of Pleasantville, County of Atlantic, State of New Jersey;

    d)    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 11 West Adams Avenue, Pleasantville, New Jersey 08232, more particularly described as: Block 126 Lot 21 on the tax map of the City of Pleasantville, County of Atlantic, State of New Jersey;

    e)    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 606 Alpine Court, Mays Landing, New Jersey 08330, more particularly described as: Block 996, Lot 7-C-1006 on the tax map of the Town of Mays Landing, County of Atlantic, State of New Jersey;

    f)    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 1009 Arctic Avenue, Atlantic City, New Jersey 08401, more particularly described as: Block 314, Lot 18 on the tax map of the City of Atlantic City, County of Atlantic, State of New Jersey; and

    g)    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 928 Arctic Avenue, Atlantic City, New Jersey 08401, more particularly described as: Block 301, Lot 1 on the tax map of the City of Atlantic City, County of Atlantic, State of New Jersey;

    h)    All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 1015 Arctic Avenue, Atlantic City, New Jersey 08401, more particularly described as: Block 315, Lot 15 on the tax map of the City of Atlantic City, County of Atlantic, State of New Jersey;

    i)    All that lot or parcel of land, together with its buildings, appurtenances, improvements,

fixtures, attachments and easements, located at 1017 Arctic Avenue, Atlantic City, New Jersey 08401, more particularly described as: Block 315, Lot 16 on the tax map of the City of Atlantic City, County of Atlantic, State of New Jersey;

j) All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 19 North Virginia Avenue, Atlantic City, New Jersey 08401, more particularly described as: Block 301, Lot 72 on the tax map of the City of Atlantic City, County of Atlantic, State of New Jersey;

k) All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 27-29 North Virginia Avenue, Atlantic City, New Jersey 08401, more particularly described as: Block 301, Lot 76 on the tax map of the City of Atlantic City, County of Atlantic, State of New Jersey;

l) All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 1430 Madison Avenue, Atlantic City, New Jersey 08401, more particularly described as: Block 684, Lot 2 on the tax map of the City of Atlantic City, County of Atlantic, State of New Jersey;

m) All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 121 West Floral Avenue, Pleasantville, New Jersey 08232, more particularly described as: Block 35, Lot 21 on the tax map of the City of Pleasantville, County of Atlantic, State of New Jersey;

n) All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 1106 South Main Street, Pleasantville, New Jersey 08232, more particularly described as: Block 232, Lot 19 on the tax map of the City of Pleasantville, County of Atlantic, State of New Jersey;

o) All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 1115 South Main Street, Pleasantville, New Jersey 08232, more particularly described as: Block 42, Lot 26.01 on the tax map of the City of Pleasantville, County of Atlantic, State of New Jersey;

p) All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 619 South New Road, Pleasantville, New Jersey 08232, more particularly described as: Block 48, Lot 16 on the tax map of the City of Pleasantville, County of Atlantic, State of New Jersey;

q) All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 627 South New Road, Pleasantville, New Jersey 08232, more particularly described as: Block 48, Lot 12 on the tax map of the City of Pleasantville, County of Atlantic, State of New Jersey;

r) All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 709 South New Road, Pleasantville,

New Jersey 08232, more particularly described as: Block 48, Lot 57 on the tax map of the City of Pleasantville, County of Atlantic, State of New Jersey;

s)  All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 1012 Harrison Avenue, Pleasantville, New Jersey 08232, more particularly described as: Block 24, Lot 14 on the tax map of the City of Pleasantville, County of Atlantic, State of New Jersey;

t)  All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 511 Noahs Road, Pleasantville, New Jersey 08232, more particularly described as: Block 48, Lot 10 on the tax map of the City of Pleasantville, County of Atlantic, State of New Jersey;

u)  All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 6464 Dehirsch Avenue, Mays Landing, New Jersey 08330, more particularly described as: Block 504 Lot 23 on the tax map of the City of Pleasantville, County of Atlantic, State of New Jersey;

v)  All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 123 West Mulberry Avenue, Pleasantville, New Jersey 08232, more particularly described as: Block 377 Lot 18 on the tax map of the City of Pleasantville, County of Atlantic, State of New Jersey;

w)  All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 308 North Connecticut Avenue, Atlantic City, New Jersey 08401, more particularly described as: Block 504 Lot 23 on the tax map of the City of Atlantic City, County of Atlantic, State of New Jersey; and

x)  All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 2217 North 52nd Street, Philadelphia, Pennsylvania 19131, more particularly described as: Parcel ID 52-1-2984-00 on the tax map of the City of Philadelphia, County of Philadelphia, Commonwealth of Pennsylvania.

3. **VEHICLES:**

a)  One black 2003 Chevrolet Avalanche, VIN: 3GNEK13T53G275110;

b)  One black 2011 Chevrolet Tahoe, VIN: 1GNSKBE04BR147046; and

c)  One 2011 Porsche Panamera, VIN: WP0AA2A76BL010090;

4. **CURRENCY:**

a)  $62,084.13 in United States currency seized from 411 Montclair Drive, Pleasantville, New Jersey;

**5. JEWELRY**

  a)  One 10k two tone diamond 7.5 bracelet;

  b)  One 14k white gold men's black and white diamond ring;

  c)  One Sterling silver 31.25" cubic zirconia tennis necklace;

  d)  One Sterling silver 8.5" cubic zirconia bracelet;

  e)  One Sterling Silver Cubic Zirconia Initial charm;

  f)  One Sterling silver cubic zirconia crown style charm;

  g)  One Sterling silver 9" cubic zirconia bracelet;

  h)  One Men's gold tone aqua master watch with diamond dial and bezel;

  i)  One Men's rose color Aqua Master watch;

  j)  One Men's Jacob and Company watch with rubber strap;

  k)  One Ladies 14k yellow gold diamond bangle bracelet;

  l)  One Sterling silver three flower necklace;

  m)  One Sterling silver flower earring;

  n)  One Sterling silver cubic zirconia stud earrings;

  o)  One 10k white gold Channel imitation ring;

  p)  One Sterling silver ladies Tiffany heart shape signet ring;

  q)  One Sterling silver ladies link Tiffany heart necklace;

  r)  One Sterling silver Tiffany charm bracelet with heart;

  s)  One 14k white gold ladies diamond engagement ring;

  t)  One 14k yellow gold link pendant with two .03 carat diamonds on snap bail;

  u)  One 18k white gold ladies blue topaz and diamond ring;

  v)  One Ladies gold filled case Tiffany & Co. Portfolio watch and strap;

  w)  One Men's stainless steel Audemars Piquet watch;

- x) One Ladies stainless steel Rolex Datejust watch;
- y) One 14k white gold diamond ring;
- z) One 14k white gold diamond pendant;
- aa) One 14k white gold 18" box link chain;
- bb) One 14k white gold diamond cluster earrings;
- cc) One 10k two tone initial K charm;
- dd) One 14k white gold cluster ring;
- ee) One 14k yellow gold sapphire and diamond bangle;
- ff) One 14k yellow gold cross;
- gg) One 14k yellow gold initial J ring;
- hh) One 10k yellow gold 7 and 3/8" peridot bracelet;
- ii) One 14k gold men's diamond cluster ring;
- jj) One 14k white gold 9" oval link bracelet; and
- kk) One sterling silver 33" cubic zirconia tennis necklace.

and all property traceable to such property, (hereinafter referred to collectively as the "Specific Property").

Based on the foregoing, Toye Tutis consents to the entry of Preliminary Orders of Forfeiture and Interlocutory Orders of Sale as to the Specific Property pursuant to Rule 32.2(b) of the Federal Rules of Criminal Procedure. Toye Tutis further consents to the administrative and/or civil judicial forfeiture of the Specific Property pursuant to 18 U.S.C. § 981 and/or 982. Toye Tutis agrees that he will not file a claim or a petition for remission or mitigation in any forfeiture proceeding involving the Specific Property and will not cause or assist anyone else in doing so. To the extent Toye Tutis has filed a claim or petition in any administrative or civil judicial forfeiture proceeding involving the Specific Property, such claims or petitions are hereby deemed withdrawn. Toye Tutis further agrees to take all necessary steps to pass clear title to the Specific Property to the United States, including, but not limited to, the surrender of such property to the United States Marshals Service and the execution of all necessary documentation.

Toye Tutis waives the requirements of Rules 32.2 and 43(a) of the Federal Rules of Criminal Procedure regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Toye Tutis understands that the forfeiture of the Specific Property, as well as any additional specific property that may be identified subsequent to the date of this agreement, is part of the sentence

that may be imposed in this case and waives any failure by the court to advise him of this pursuant to Rule 11(b)(1)(J) of the Federal Rules of Criminal Procedure at the guilty plea proceeding. It is further understood that any forfeiture of Toye Tutis's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture. The Government agrees not to seek a fine in this case. Toye Tutis hereby waives any and all claims that the forfeiture constitutes an excessive fine and agrees that the forfeiture does not violate the Eighth Amendment.

Toye Tutis represents that he will disclose all of his assets to the United States on a Financial Disclosure Statement. Toye Tutis agrees that if this Office determines that Toye Tutis has intentionally failed to disclose assets on that Financial Disclosure Statement, that failure constitutes a material breach of this agreement. In addition, Toye Tutis consents to the administrative, civil, and/or criminal forfeiture of his interests in any assets that he failed to disclose on the Financial Disclosure Statement. Should undisclosed assets that Toye Tutis owns or in which Toye Tutis has an interest be discovered, Toye Tutis knowingly and voluntarily waives his right to any required notice concerning the forfeiture of said assets. Toye Tutis further agrees to execute any documents necessary to effectuate the forfeiture of said assets. In addition, Toye Tutis agrees to submit to a recorded deposition under oath regarding the sources of funds paid to him, directly or indirectly, and their disposition, if requested by this Office.

Toye Tutis also consents and agrees to forfeit and abandon to federal, state, and/or local law enforcement all rights, title, and interest in the following firearms, weapons, ammunition and bulletproof vests which were seized by law enforcement officers on or about December 11, 2014, including: (1) the .45 caliber Taurus pistol, Model PT24/7 Pro, Serial Number NZ109891; (2) the .45 caliber Llama pistol, Model Especial, with an obliterated serial number; (3) 30 rounds of ammunition (19 rounds of .45 caliber ammunition and 11 rounds of .32 caliber ammunition); and (4) the bulletproof vest, all of which were seized from his residence at 411 Montclair Drive, Pleasantville, New Jersey; (5) the .32 caliber Harrington & Richardson revolver, Model 733, Serial Number AT134652; and (6) six rounds of .32 caliber ammunition; and (7) the cellphone Taser recovered from his place of business, Ta'Ja Laundromat, 1011 Arctic Avenue, Atlantic City, New Jersey. Toye Tutis waives all challenges of any kind to the forfeiture and abandonment of this property by federal, state, and/or local law enforcement. Toye Tutis further waives any additional notice requirement in connection with the forfeiture and abandonment of this property and consents to the disposal, destruction, or any other lawful disposition, of the forfeited and abandoned property at the discretion of federal, state, and/or local law enforcement.

Notwithstanding the forfeiture provisions set forth above, the parties agree that Toye Tutis does not consent to the forfeiture of—and the government will not seek the forfeiture of—any rights or interests Toye Tutis may have in the real property described in paragraphs 2(a)–(d) of the forfeiture section of this agreement (*i.e.*, 1011 Arctic Ave., Atlantic City; 1929 Blaine Ave., Atlantic City; 101 W. Park Ave., Pleasantville; and 11 W. Adams Ave., Pleasantville, all of which are in New Jersey) if the following conditions are met on or before 5:00 p.m. on ~~November~~ December 15, 2016: [handwritten: "December" with initials]

1. Amanda Tutis forfeits and relinquishes any and all ownership, rights, claims, or interests to the real property described in paragraphs 2(e)–(x) of the forfeiture section

10

above—whether held individually by Amanda Tutis or as part of her membership, shares, or other interest in Ta'Ja Real Estate Investors LLC—and: (a) executes a separate, contemporaneous knowing and voluntary agreement with this Office forfeiting all such interests; and (b) executes all necessary amendments to all corporate documents (including but not limited to incorporation documents and operating agreements) to effectuate such forfeiture.

2. Kyle E. McHugh forfeits and relinquishes any and all ownership, rights, claims, or interests to the real property described in paragraphs 2(e)–(x) of the forfeiture section above—whether held individually by Kyle E. McHugh or as part of his membership, shares, or other interest in Ta'Ja Real Estate Investors LLC—and: (a) executes a separate, contemporaneous knowing and voluntary agreement with this Office forfeiting all such interests; and (b) executes all necessary amendments to all corporate documents (including but not limited to incorporation documents and operating agreements) to effectuate such forfeiture.

Should the conditions above not be met, Toye Tutis agrees that he shall forfeit the real property described in paragraphs 2(a)–(d) of the forfeiture section of this agreement pursuant to all the terms and conditions of forfeiture set forth in this agreement.

## Immigration Consequences

The defendant understands that, if he is not a citizen of the United States, his guilty plea to the charged offense will likely result in his being subject to immigration proceedings and removed from the United States by making him deportable, excludable, or inadmissible, or ending his naturalization. The defendant understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. The defendant wants and agrees to plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause his removal from the United States. The defendant understands that he is bound by his guilty plea regardless of any immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to guilty plea and to his sentence based on any immigration consequences, and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

## Other Provisions

This agreement is limited to the United States Attorney's Office for the District of New Jersey and cannot bind other federal, state, or local authorities. However, this Office will bring this agreement to the attention of other prosecuting offices, if requested to do so.

This agreement was reached without regard to any civil or administrative matters that may be pending or commenced in the future against Toye Tutis. This agreement does not prohibit the United States, any agency thereof (including the Internal Revenue Service) or any third party from initiating or prosecuting any civil or administrative proceeding against Toye Tutis.

No provision of this agreement shall preclude Toye Tutis from pursuing in an appropriate forum, when permitted by law, an appeal, collateral attack, writ, or motion claiming that Toye Tutis received constitutionally ineffective assistance of counsel.

## No Other Promises

This agreement constitutes the plea agreement between Toye Tutis and this Office and supersedes any previous agreements between them. No additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties.

Very truly yours,

PAUL J. FISHMAN
United States Attorney

By: DIANA VONDRA CARRIG
Assistant U.S. Attorney

APPROVED:

MATTHEW SKAHILL
Deputy Attorney-In-Charge, Camden

I have received this letter from my attorney J. Michael Farrell, Esquire. I have read it and my attorney and I have discussed it and all of its provisions, including those addressing the charge, sentencing, stipulations, waiver, forfeiture and immigration consequences. I understand this letter fully. I hereby accept its terms and conditions and acknowledge that it constitutes the plea agreement between the parties. I understand that no additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties. I want to plead guilty pursuant to this plea agreement.

AGREED AND ACCEPTED:

_____        Date: 11/1/16
TOYE TUTIS

I have discussed with my client this plea agreement and all of its provisions, including those addressing the charge, sentencing, stipulations, waiver, forfeiture and immigration consequences. My client understands this plea agreement fully and wants to plead guilty pursuant to it.

_____        Date: 11/1/16
J. MICHAEL FARRELL, ESQUIRE

## Plea Agreement with Toye Tutis

## Schedule A

1. This Office and Toye Tutis recognize that the United States Sentencing Guidelines are not binding upon the Court. This Office and Toye Tutis nevertheless agree to the stipulations set forth herein.

2. The version of the United States Sentencing Guidelines effective November 1, 2015 applies in this case. The guideline applicable to Count 1 is U.S.S.G. § 2D1.1. The guideline applicable to Count 13 is § 2S1.1.

3. Count 1, drug conspiracy in violation of 21 U.S.C. § 846:

    a) The offense involved more than 150 but less than 450 kilograms of cocaine. This results in a Base Offense Level of 36. *See* U.S.S.G. § 2D1.1(c)(2).

    b) Because Toye Tutis possessed a dangerous weapon within the meaning of § 2D1.1(b)(1), his offense level is increased by two levels.

    c) Toye Tutis agrees that he was an organizer, leader, manager, or supervisor of the relevant criminal activity, which would result in an upward adjustment of 2 levels, pursuant to U.S.S.G. § 3B1.1(c). The Government, however, asserts and reserves the right to argue at sentencing that Toye Tutis's role was further aggravating, in that he was an organizer, leader, manager and supervisor of the Count 1 drug trafficking conspiracy, which involved 5 or more participants and was otherwise extensive, which would result in a further upward adjustment, pursuant to U.S.S.G. § 3B1.1(a) and (b). The Court will have to resolve this issue at sentencing and determine whether the defendant should face a 2, 3 or 4 level upward adjustment for his aggravating role in the drug trafficking conspiracy, pursuant to U.S.S.G. § 3B1.1.

4. Count 13, money laundering conspiracy in violation of 18 U.S.C. § 1956(h):

    a) Pursuant to U.S.S.G. § 2S1.1(a)(1), the Base Offense Level is 38 because, as set forth above, the underlying drug offense from which the laundered funds were derived involved 150 but less than 450 kilograms of cocaine and because Toye Tutis possessed a dangerous weapon.

    b) Pursuant to U.S.S.G. § 2S1.1(b)(2)(B), because Toye Tutis will be convicted under 18 U.S.C. § 1956, the base offense level in increased by 2 levels.

    c) Toye Tutis agrees that he was an organizer, leader, manager, or supervisor of the relevant criminal activity, which would result in an upward adjustment of 2 levels, pursuant to U.S.S.G. § 3B1.1(c). The Government, however, asserts and reserves the right to argue at sentencing that Toye Tutis's role was further aggravating, in that he was an organizer, leader, manager and supervisor of the Count 13 money

laundering conspiracy, which involved 5 or more participants and was otherwise extensive, which would result in a further upward adjustment, pursuant to U.S.S.G. § 3B1.1(a) and (b). The Court will have to resolve this issue at sentencing and determine whether the defendant should face a 2, 3 or 4 level upward adjustment for his aggravating role in the money laundering conspiracy, pursuant to U.S.S.G. § 3B1.1.

5. Grouping: Counts 1 and 13 group because the offense levels for both counts were determined largely on the basis of the quantity of drugs involved. See U.S.S.G. § 3D1.2(d).

6. As of the date of this letter, Toye Tutis has demonstrated a recognition and affirmative acceptance of personal responsibility for the offense charged. Therefore, a downward adjustment of 2 levels for acceptance of responsibility is appropriate if Toye Tutis's acceptance of responsibility continues through the date of sentencing. See U.S.S.G. § 3E1.1(a).

7. The Court will determine whether Toye Tutis is a Career Offender under U.S.S.G. § 4B1.1. If the Court determines that Toye Tutis is a Career Offender, his Criminal History Category will be VI. See U.S.S.G. § 4B1.1(b)(1).

8. Toye Tutis reserves the right to move for a variance pursuant to the relevant factors outlined in 18 U.S.C. § 3553(a) and agrees that in seeking such a variance he will not argue for a sentence of less than 180 months' imprisonment. This Office reserves the right to oppose any such variance and also agrees not to argue for a sentence of more than 330 months' imprisonment. The parties agree not to seek or argue for any upward or downward departure, adjustment, or variance not otherwise set forth herein.

9. Toye Tutis reserves the right to appeal and to assert on appeal that the trial judge erred in denying his pretrial motion to suppress evidence obtained by electronic surveillance (ECF Document 322), in violation of the laws and Constitution of the United States, but only as to the following bases set forth in that motion:

    a) That the September 26, 2014 wiretap order on Toye Tutis's telephones, which order authorized a roving wiretap under New Jersey law (hereinafter "the Tutis wiretap"), was an unconstitutional general warrant, in that it was obtained in violation of the roving wiretap provisions of New Jersey law, but defendant's arguments and claims on appeal are limited to the specific reasons and arguments set forth in defendant's suppression motion (ECF Document 322), specifically, on pages 7–12 therein, and at oral argument on that part of the motion, including the argument that the issuance and execution of a roving wiretap warrant purportedly authorizing the interception of communications from a target facility and any other facility which the affiant, in his sole discretion, determines is being used by the target, violates the Fourth Amendment's particularity requirement as a general warrant where the affiant seizes communications from the original target facility and subsequently identified facilities simultaneously.

*Schedule A, TP9*   *DVC gmt*

1.  That the Fourth Amendment demands that the government's use of a Cell Site Simulator be permitted only upon the issuance of a Search Warrant particularly authorizing the invasion of the sanctity of the home or other place deserving of a reasonable expectation of privacy where that technology is used to discover and seize cell phone signals emanating from those private areas, and that the continuing authorization of the Tutis wiretap was improper because it was based in part on information subsequently obtained from an improperly and illegally issued communications data warrant, BED-ATL-162-CDW-14, dated October 14, 2014 ("CDW"). The defendant's arguments and claims on appeal are limited to the reasons, evidence and arguments set forth in the defendant's motions, briefs, hearings, and oral argument.

2.  That the issuance and execution of a "roving" wiretap warrant purportedly authorizing the interception of communications from a target facility and any other facility which the affiant, in his sole discretion, determines is being used by the target, violates the Fourth Amendment's particularity requirement as a general warrant where the affiant seizes communications from the original target facility and subsequently identified facilities simultaneously, and that the Toye Tutis September 26, 2014 wiretap order was an unconstitutional general warrant, in that it was obtained in violation of the roving wiretap provisions of the laws and Constitutions of New Jersey and the United States. The defendant's arguments and claims on appeal are limited to the reasons, evidence and arguments set forth in the defendant's motions, briefs, hearings, and oral argument.

3.      That an Affidavit for a "roving" wiretap permitting the Affiant to move a tap to subsequently identified telephone facilities of the target requires that the Affidavit contain allegations of fact that the target of the wiretap acted with the deliberate purpose of thwarting detection by switching phones and whether, the defendant, Toye Tutis, as an aggrieved person, is entitled to suppression of the fruits of the wiretaps of Ivan Naranjo where, as here, the Affidavit submitted in support of the Naranjo wiretap contained no such allegations of fact and that the October 2, 2014 wiretap order on Ivan Cuellar Naranjo's telephones, which order authorized a roving wiretap, was issued improperly and illegally in violation of the laws and Constitutions of New Jersey and the United States. The defendant's arguments and claims on appeal are limited to the reasons, evidence and arguments set forth in the defendant's motions, briefs, hearings, and oral argument.

4.      That the Tutis wiretap of September 26, 2014 was obtained in violation of <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).  The defendant's arguments and claims on appeal are limited to (a) the reasons and arguments set forth, and (b) the false statements and material omissions specifically identified, in Defendant's motion, briefs, hearing testimony, and oral argument.

5.      That the Tutis wiretap of September 26, 2014 was issued in violation of the "silver platter" doctrine. The defendant's arguments and claims on appeal are limited to the reasons, evidence and arguments set forth in the defendant's motions, briefs, hearings, and oral argument.

15-B

b) That the Tutis wiretap was obtained in violation of Franks v. Delaware, 438 U.S. 154 (1978), but defendant's arguments and claims on appeal are limited to (a) the reasons and arguments set forth, and (b) the false statements and material omissions specifically identified, in (i) ECF Document 234, specifically, the factual background section at pages 1–6 (ECF Document pages 2–7), and the legal argument section at pages 9–12 therein (ECF Document pages 10–13), and (ii) in ECF Document 322, specifically, pages 13–24 therein, and at the oral argument held on February 23, 2014 for the first round of pretrial motions, and at the October 17, 2016 and October 19, 2016 Franks hearing(s) conducted by the trial judge.

c) That the Tutis wiretap was issued in violation of the "silver platter" doctrine, meaning that since the investigation in this case was a joint federal-state investigation, the trial judge should have applied federal law to determine whether evidence was lawfully obtained by state law enforcement authorities pursuant to (a) consensual monitoring of undercover conversations, which monitoring was approved by the Atlantic County Prosecutor, and (b) the Tutis wiretap, but defendant's arguments and claims on appeal are limited to the reasons and arguments set forth in defendant's suppression motion (ECF Document 322), specifically, on pages 25–31 therein, and at oral argument on that part of the motion.

d) That the continuing authorization of the Tutis wiretap was improper because it was based in part on information subsequently obtained from an improperly and illegally issued communications data warrant, BED-ATL-162-CDW-14, dated October 14, 2014 ("CDW"), that authorized the use of a cell-site simulator ("CSS"), but defendant's arguments and claims on appeal are limited to the reasons and arguments set forth in defendant's suppression motion (ECF Document 322), specifically, on pages 32–35 therein, and reply brief (ECF Document 331), specifically, on pages 15–20 therein, and at oral argument on that part of the motion, including the argument that the Fourth Amendment demands that the Government's use of a CSS be permitted only upon the issuance of a search warrant particularly authorizing the invasion of the sanctity of the home or other place allegedly deserving of a reasonable expectation of privacy where that technology is used to discover and seize cell phone signals emanating from those private areas.

e) That the October 2, 2014 wiretap order on Ivan Cuellar Naranjo's telephones, which order authorized a roving wiretap under New Jersey law, was issued improperly and illegally, but defendant's arguments and claims on appeal are limited to the reasons and arguments set forth in defendant's suppression motion (ECF Document 322), specifically, on pages 44–46 therein, and at oral argument on that part of the motion, including the argument that the affidavit in support of the October 2, 2014 wiretap order requires that the affidavit contain allegations of fact that the target of the wiretap acted with the deliberate purpose of thwarting detection by switching phones and whether defendant Toye Tutis, as an aggrieved

~~person, is entitled to suppression of the fruits of that wiretap where the affidavit submitted in support of that wiretap allegedly contained no such allegations of fact.~~ *[struck through]* DLC / JM7

10. Toye Tutis knows that he has and, except as noted in paragraph 9, voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. §3742 or a motion under 28 U.S.C. § 2255, which challenges his conviction or the sentence imposed by the sentencing court. ^ This Office will not file any appeal, motion or writ which challenges the sentence imposed by the sentencing court if that sentence is 330 months or more. The provisions of this paragraph are binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, if the sentencing court accepts a stipulation, both parties waive the right to file an appeal, collateral attack, writ, or motion claiming that the sentencing court erred in doing so.

    *[handwritten margin note: "if his sentence is 330 months or less."]*

11. Both parties reserve the right to oppose or move to dismiss any appeal, collateral attack, writ, or motion barred by the preceding paragraph and to file or to oppose any appeal, collateral attack, writ or motion not barred by the preceding paragraph.

*[initials: DLC / JM7]*

17