IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TOYE TUTIS,<br><br>       Defendant. | HON. JEROME B. SIMANDLE<br><br>Criminal No. 14-699-1 (JBS)<br><br>**OPINION** |

APPEARANCES:

    Craig Carpenito, United States Attorney
    By:  Diana Carrig, Assistant U.S. Attorney
    401 Market Street, 4th Floor
    P.O. Box 2098
    Camden, NJ  08101-2098

    Stanley O. King, Esq.
    King & King, LLC
    231 Broad Street
    Woodbury, NJ  08096
        Attorney for Defendant

SIMANDLE, U.S. District Judge:

Presently before the Court is the second motion of Defendant Toye Tutis to withdraw his plea of guilty pursuant to Rule 11(d)(1)(B), Fed. R. Crim. P., filed February 22, 2019.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On November 1, 2016, after his jury had been selected, Defendant Toye Tutis pled guilty under a written plea agreement to being a leader or supervisor of a major drug trafficking conspiracy and an associated money laundering conspiracy.  The sole remaining

co-defendant was Tutis' wife, Jazmin Vega, who also entered her plea of guilty to the money laundering conspiracy charge on November 1, 2016.

Thereafter, Tutis moved to withdraw his guilty plea under Rule 11(d)(1)(B), Fed. R. Crim. P. [Docket Item 443], raising two main contentions. Initially, he claimed he understood his plea agreement to be a package deal with that of his wife, Jazmin Vega, and that this Court conducted a Rule 11 hearing that failed to include the colloquy required by United States v. Hodge, 412 F.3d 479 (3d Cir. 2005) (applicable to joint plea agreements to assure each co-defendant's knowing, intelligent, and voluntary acceptance of the plea and waiver of jury trial rights). Alternately, Tutis argued that even if the pleas were not coupled -- as indeed they weren't -- his decision to plead guilty was nonetheless not knowing or voluntary because he mistakenly thought he had to accept his plea agreement or his wife would not be permitted to plead guilty, which he blamed on his ex-attorney, J. Michael Farrell, whom Tutis had retained as the case moved toward trial in 2016.

The Court conducted three full days of hearings exploring the evolution of Tutis' plea agreement, the conduct and knowledge of Tutis' prior attorney J. Michael Farrell, and the knowledge of Jazmin Vega and her attorney, Troy Archie, Esq., as plea negotiations unfolded, together with detailed analysis of the Rule 11 hearings of Tutis and Vega, the Tutis application for permission

to enter a plea of guilty, the various draft plea agreements, and the final plea agreements of Tutis and Vega.  Mr. Farrell, Mr. Archie, and Ms. Vega all testified and were cross-examined.  Mr. Tutis declined to testify at the end of those hearings, placing his waiver on the record.  (Tr. June 26, 2017 at 147-150.)

This Court held, in a 51-page Opinion filed November 13, 2018 [Docket Item 556] (hereafter "November 13th Opinion"), that Defendant Tutis failed to demonstrate a fair and just reason for requesting the withdrawal of his guilty plea.  Namely, the Court found:  (1) the Defendant does not assert his innocence in any plausible way (as explained in Part III.A.1 of the November 13th Opinion); (2) the Defendant does not present a strong reason justifying the withdrawal of the plea for lack of a <u>Hodge</u> colloquy because the pleas were not packaged, or because Tutis did not understand the pleas were unpackaged and would not have pled guilty in any event (as explained in Part III.A.2 of the November 13th Opinion).  As to the later point, the Court did not credit the testimony of former attorney Farrell that he himself misunderstood the pleas to be packaged, and the Court found that Farrell's testimony and self-confession of being inadequate defense counsel in advising the guilty plea was false and motivated by the corrupt desire to help his former client with untruthful testimony (as explained in Parts II.H and III.A.2.b of that Opinion).  Moreover, after considering all the circumstances, the Court found Mr. Tutis

3

had not shown he would have gone to trial and rejected the final plea offer that had achieved the favorable bargaining points that Tutis had demanded as negotiations evolved, including preservation of the right to appeal certain pretrial rulings, dismissal of substantial weapons charges, and dismissal of the prospect of an enhanced penalty under 21 U.S.C. § 851, all in order to confront the mountain of evidence consisting of numerous inculpatory taped conversations, documents, surveillances, and testimony awaiting at trial (as explained in Parts II.(I) and III.B.2.b of the November 13th Opinion). Moreover, the Court rejected Defendant's claim and Farrell's testimony that Farrell had been confused and ineffective as Tutis' counsel in advising him to accept the final plea agreement, finding "Farrell's testimony amounts to a clumsy and unethical attempt by ex-counsel to 'fall on his sword,' albeit a fabricated sword, for the benefit of setting aside a conviction." (November 13th Opinion at pp. 32-33 & 44-45; see Parts II.H & III.A.2).

Having failed in his effort to withdraw his guilty plea on the ground that it was not voluntary, and that he felt coerced to help his wife and would otherwise have gone to trial, and arguing that Farrell was ineffective counsel in the guilty plea process, Tutis now claims that he should be permitted to withdraw his plea on the ground it was not knowing and intelligent, due to the ineffective assistance of his prior counsel J. Michael Farrell who

mistakenly advised him to accept the plea. The two claims -- lack of voluntariness in the 2017 motion to withdraw his guilty plea and his present motion claiming a mistaken advice from his attorney causing Tutis' lack of knowledge that he did not have to plead guilty to "save" his wife -- are directly related. Both depend on the essential factual predicate that Tutis and attorney Farrell were both confused about whether Tutis' plea had to be a package deal with Vega's plea; similarly, both depend upon determining whether this mistake or confusion actually mattered, that is, whether Tutis would have elected to go to trial, facing substantially increased charges that were otherwise mooted by the guilty plea, if he understood that his wife's guilty plea no longer depended on his decision.

Moreover, both the 2017 motion and the current one are motions to withdraw the plea pursuant to Rule 11(d)(1)(B), which requires consideration, as a first factor, whether the defendant asserts his innocence, United States v. Siddons, 660 F.3d 699, 703 (3d Cir. 2011), which "must be buttressed by facts in the record that support a claimed defense" and must "sufficiently explain the contradictory position he took during the plea colloquy." Id. Regarding Defendant's 2017 motion, the Court found the motion was "bereft of any proffer of facts in the record casting doubt on Tutis' guilt," nor was there any proffer that some element of guilt was missing or even debatable. (November 13th Opinion at 38)

[Docket Item 556]. The Court also found that Defendant's initial motion failed to explain how his prior Rule 11 hearing testimony under oath, admitting that he was guilty as an organizer, leader, manager, or supervisor of the charged conspiracy to distribute 150 to 450 kilograms of cocaine and approximately 26 kilograms of heroin, coupled with similar detailed admissions of money laundering, was incorrect or untrue. (Id. at 25-26, 38-40).

The same is true of the present motion, namely, there is not one word about having a viable defense to the charges or an explanation of why his admissions of factual guilt in 2016 should be disregarded now, other than his claim that he lied to the Court when he pled guilty, to be discussed below. Accordingly, Defendant fails to demonstrate any plausible claim of innocence to the charges to which he pled guilty.

This was confirmed by Tutis' testimony upon the present motion at a hearing on April 4, 2019. He admitted he reviewed the wiretap calls from the extensive criminal investigation of the drug distribution conspiracy and heard himself on tape talking about purchasing and selling multi-kilogram quantities of cocaine and shipping drug proceeds to California and arranging for others to receive shipments of the drugs to the locations he arranged in New Jersey. He testified he was aware that a firearm and $62,000 cash as drug proceeds were found in the closet of his premises. He was aware that if he went to trial, the Government's § 851 penalty

6

enhancement notice would increase his mandatory minimum penalty to 240 months just for the drug conspiracy in the event of conviction.

When asked why he admitted guilt in the Rule 11 colloquy in his testimony of November 1, 2016, Tutis testified on April 4, 2019 that "[m]y testimony was not truthful," that he basically lied to protect his wife. This time, Tutis testified in effect that he "conspired with nobody," and that while he was "selling drugs," he "didn't conspire." This, of course, makes no sense, in light of his admission, once again, in his April 4, 2019 testimony, that he bought drugs from the alleged co-conspirators, and that this group trafficked in 150 to 450 kilograms of cocaine and 26 kilograms of heroin. He acknowledged he had agreements with the others to buy or sell specified quantities of cocaine and heroin at agreed-upon prices, the essence of the agreement required for conspiracy to distribute drugs. Similarly, concerning the money laundering conspiracy, he again admitted on April 4, 2019, as he had in his Rule 11 colloquy on November 1, 2016, that he conspired with his wife, Jazmin Vega, to engage in their multiple trips to banks for money laundering of drug proceeds, although he added on April 4th that it was "not all drug money" because some portion came from his legitimate businesses. This, of course, is no defense to the charged conspiracies.

His April 4th testimony contained a litany of lies wherein he said he never read or understood his final plea agreement, contrary

to his November 1st testimony at the Rule 11 hearing and his Application form for that hearing. On re-direct testimony on April 4th, Tutis placed the blame on Farrell for allegedly advising him to lie to the Court at the Rule 11 hearing.

**II. DISCUSSION**

A. Standard for Withdrawal of Guilty Plea

Rule 11(d)(2)(B), Fed. R. Crim. P., provides in relevant part that "[a] defendant may withdraw a plea of guilty ... (2) after the court accepts the plea but before it imposes sentence if: ... (B) the defendant can show a fair and just reason for requesting the withdrawal." For withdrawal of a guilty plea before sentencing, the defendant must meet a "substantial" burden of demonstrating the "fair and just reason" for withdrawal. United States v. Siddons, 660 F. 3d 699, 703 (3d Cir. 2011). Thus, "[o]nce a court accepts a defendant's guilty plea, the defendant is not entitled to withdraw that plea simply at his whim." United States v. Jones, 336 F.3d 245, 252 (3d Cir. 2003).

"When determining whether a defendant has shown a 'fair and just reason' for withdrawing a plea, a district court must consider whether: '(1) the defendant asserts his innocence; (2) the defendant proffered strong reasons justifying the withdrawal; and (3) the government would be prejudiced by the withdrawal.'"

Siddons, 660 F.3d at 703 (quoting United States v. King, 604 F.3d 125, 139 ((3d Cir. 2010)).

Here Defendant Tutis asserts that he should be allowed to withdraw his plea because he received ineffective assistance of counsel and would not have pled guilty but for his prior attorney's confusion and bad advice, in violation of his constitutional right to effective assistance. He alleges that this supplies a fair and just reason to with draw his plea.

The parties agree that Tutis bears the burden of establishing his former counsel's ineffectiveness under Strickland v. Washington, 466 U.S. 668 (1984). See Smith v. Robbins, 528 U.S. 259, 285 (2000); United States v. Davies, 394 F.3d 182, 189 (3d Cir. 2005). To meet that burden, Tutis must satisfy Strickland's two-part test. First, Tutis must show that his former counsel's representation was not "within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (internal quotation marks omitted). Second, Tutis must show "prejudice" -- i.e., that former counsel's alleged deficiencies "affected the outcome" of the proceedings. Id. at 58-59. Thus, Tutis "had to demonstrate 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Premo v. Moore, 562 U.S. 115, 129 (2011) (quoting Hill, 474 U.S. at 59).

    B.    Ineffective Assistance of Counsel

9

At the outset, there is no issue of fact in this second motion that was not already presented and decided in the first one, in which Defendant Tutis fully participated. Nonetheless, the Court will address these issues under the Strickland rubric and make its findings accordingly, drawing from the first motion and the November 13th Opinion.

### 1. Whether Prior Counsel was Ineffective

First, as to Farrell's alleged ineffective assistance of counsel, the issue was already raised, testimony taken, and the issue decided in the first motion. Tutis' reply brief in the first motion [Docket Item 452] submitted the certification of J. Michael Farrell [Docket Item 452-2], in which Farrell stated, among other things, that he never informed Tutis that the pleas were unpackaged because he did not know. The Government pointed out, in its surreply [Docket Item 453] that "the inclusion of Mr. Farrell's certification to the Motion has made the Motion akin to a Section 2255 motion based on alleged ineffective assistance of counsel." [Id. at p.2.] The Government argued that Farrell's statement, if true, was "tantamount to an admission that Farrell did not fully read and/or understand the final plea agreement so as to render appropriate and competent advice to Tutis. That statement also directly contradicts Mr. Farrell's statements at the Tutis change of plea hearing." [Id. (footnote omitted).] As the motion would involve probing discussions between attorney and client that were

otherwise privileged, the United States sought a determination that the attorney-client privilege as to plea negotiations and discussions had been waived by Defendant placing the effectiveness of advice and preparation of defense counsel into play and sought leave to question Farrell and to review Farrell's case file. [Id.] All parties agreed with the Government's characterization and also that the attorney-client privilege was waived by Tutis' claim of reliance on advice of counsel that was incorrect. [Docket Item 456, Memorandum Opinion and Order of April 28, 2017 at 1.] Mr. Tutis himself was questioned at the hearing on April 26, 2017 on the Government's claim of waiver of the privilege, and upon the record he waived his attorney-client privilege relating to his claim that Farrell had ineffectively represented him by poor preparation and bad advice when pleading guilty. [Id. at 2, ¶¶ 4, 5.]

Thus, the crucial point is that Tutis (and his current counsel) knew, in April of 2017, two months before the hearings on his motion to withdraw in June of 2017, that he had squarely placed effectiveness of his former counsel, Mr. Farrell, into issue as a basis to withdraw his plea of guilty.

As discussed in the Court's November 13th Opinion denying Tutis' motion to withdraw his guilty plea, ex-attorney Farrell testified on June 21, 2017 and June 23, 2017, including testimony about his own alleged self-confessed inadequate representation of

11

Tutis at the time of his guilty plea. As noted, Tutis declined to testify at the June 2017 hearings regarding any advice Farrell did or did not provide to him. Mr. Archie and Ms. Vega also testified, with Mr. Archie explaining that the pleas were uncoupled before November 1st and that Mr. Farrell was aware of it. The Court found that Farrell's testimony that he didn't understand his client's plea and its unpackaged nature was not credible. (Opinion of Nov. 13, 2018 at 31-33, 44.) The Court further found that Farrell attempted to manufacture an ineffective assistance of counsel claim in a corrupt post-plea attempt to help his former client. (Id. at 32-33, 43, 44-45.) This Court instead credited Farrell's assurances from the November 1st plea hearing that his client's plea was knowing, voluntary, and the product of extensive conversations and negotiations. (Id. at 31-32.)

The current testimony of Tutis on April 4, 2019, changes nothing about the prior determinations of this Court. Tutis introduces no evidence that was unavailable at the time his first withdrawal motion was heard and adjudicated. As discussed above, Tutis' testimony about the advice he received from Farrell is at a 180° variance from what Tutis testified under oath in his Rule 11 hearing on November 1, 2016. His new testimony -- that he lied to this Court on November 1st about reading and understanding his guilty plea, that Farrell told him to lie, and that he received no real benefit from his November 1st plea agreement -- is incredible.

The Court analyzed the statements of Farrell and Tutis from the lengthy Rule 11 hearing (see Opinion of Nov. 13, 2018 at 21-28), incorporated herein. As with Farrell, the Court continues to believe Tutis' testimony in his extensive November 1st plea colloquy and disbelieves this contrived testimony about ineffective assistance. Tutis and Farrell knew exactly what they were doing on November 1st.

In summary, as to the first prong of the Strickland test, the Court finds that Tutis has failed to show that his former attorney J. Michael Farrell's representation surrounding the negotiations, advice, and entry of Tutis' guilty plea on November 1st was not "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, supra, 474 U.S. at 56. This is sufficient reason to reject Defendant's ineffective assistance of counsel claim.

2. Whether Defendant has Shown Prejudice

We next address the issue of whether, if Farrell was ineffective through lack of preparation and bad advice (which he was not), did Farrell's alleged deficiencies affect the outcome of the proceedings? Here, Defendant must demonstrate that, but for Farrell's errors, he would not have pled guilty and would have insisted on going to trial. Premo v. Moore, 562 U.S. 115 at 129 (quotations omitted).

This issue -- essentially whether Tutis would have opted for trial if Farrell had advised that his plea was no longer essential to his wife's ability to plead guilty -- was likewise litigated and decided in the first motion. In Part II.I of the Opinion of Nov. 13, 2018, entitled "Would Tutis Have Rejected Conditional Plea if He Fully Understood it was not Packaged with Vega's Plea?" [Docket Item 556 at 33-36], the Court found that "Tutis has failed to show that he would not have entered his plea of guilty if he knew it was unpackaged." Id. at 33. The simple facts, as found in the November 13th Opinion, revealed that Tutis continuously <u>rejected</u> the earlier <u>packaged</u> plea agreement offers because he wanted to drive a harder bargain with respect to clawing back some of the forfeited properties and preserving his right to appeal certain suppression motion decisions by a conditional plea agreement under Rule 11(a)(2), Fed. R. Crim. P. When the Government acceded in the unpackaged, conditional plea of November 1st, he accepted. There was no trial strategy then, and there is none now, by which Tutis would defend against the massive evidence against him at trial.

His recent testimony of April 4, 2019 does not change this prospect -- he still has not indicated, nor has his current attorney, what his strategy might be if his guilty plea was nullified, and he opted to defend at trial. His testimony that he would have opted for trial rather than entering the favorable plea

that he bargained for is not logical or credible.  Thus, whatever former attorney Farrell's conduct or advice was on November 1, 2016, Defendant Tutis has failed to establish the second <u>Strickland</u> element, namely, that Tutis was prejudiced by it.

    C.   <u>"Fair and Just Reason" for Withdrawal</u>

Defendant Tutis, in this second motion to withdraw his plea of guilty, has proffered that the ineffective assistance by prior counsel, Mr. Farrell, supplies "fair and just cause" to withdraw his plea under Rule 11(d)(2)(B), Fed. R. Civ. P.  Because the Court has now twice rejected that ground, Defendant has failed to meet his "substantial" burden under <u>United States v. Siddons</u>, 660 F.3e at 703.

Further, as found in the November 13th Opinion and repeated today, the Court finds Defendant Tutis fails to assert his innocence in any plausible way.

Finally, under the third <u>Siddons</u> factor, the Court finds the Government would be somewhat prejudiced by the passage of time from the October 2016 trial start date and today, two and one-half years later, due to fading memories of persons testifying about events in the indictment going back to 2010.  The Government had conceded in the first motion, in early 2017, that its only prejudice would accrue from having to re-prepare for trial and to replace one of the trial attorneys who retired (see Opinion of Nov. 13, 2018 at 49-50), but overall, it was not claiming undue

15

prejudice. Now, in addition to those lesser types of prejudice that are still present, the Government points out that at any trial in late 2019, three years after this guilty plea was entered and the evidence was put into boxes, witnesses would be called upon to accurately recall events from the 2010-2014 period central to these charges. The Court recognizes this as an undue prejudice to the Government, although not as weighty as the first two <u>Siddons</u> factors -- that Defendant Tutis does not assert his innocence in some meaningful way, and that Defendant has not proffered a substantial reason justifying the withdrawal. Thus, Defendant falls short on all three <u>Siddons</u> factors.

**III. <u>CONCLUSION</u>**

For these reasons, and for those stated in the Court's Opinion of November 13, 2018, Defendant Tutis ha failed to demonstrate that he should be permitted to withdraw his plea of guilty, or that his former attorney was constitutionally ineffective under <u>Strickland</u>. The motion will again be denied, and the accompanying Order is entered.

| | |
|---|---|
| **April 26, 2019** | s/ Jerome B. Simandle |
| Date | JEROME B. SIMANDLE |
| | U.S. District Judge |