```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF NEW JERSEY
                  CAMDEN VICINAGE
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    v.<br><br>TOYE TUTIS,<br><br>            Defendant. | Criminal No. 14-699-1 (RMB)<br><br>**OPINION** |

**APPEARANCES:**
DIANA V. CARRIG
OFFICE OF THE U.S. ATTORNEY
U.S. POST OFFICE BUILDING
401 MARKET STREET, 4TH FLOOR
CAMDEN, NEW JERSEY 08101

   *On behalf of the Government*

TOYE TUTIS
67059-050
FCI-GILMER
P.O. BOX 6000
GLENVILLE, WEST VIRGINIA 26351

   *Pro se*

**RENÉE MARIE BUMB, United States District Judge**

   This matter comes before the Court on the Motion to Stay [Docket No. 616], Motion for an Order Granting Relief [Docket No. 655], Motion to Reconsider [Docket No. 687], and Motion to Disqualify [Docket No. 699], all brought by Defendant Toye Tutis. For the reasons expressed herein, the Court will deny each of the

Motions, either in full or in part. The Court will address each Motion in turn.

## I. MOTION TO STAY

Defendant's Motion to Stay asks this Court "to issue a stay on the sale of the defendant's properties until this matter is resolved on direct appeal." [Docket No. 616, at 9.] Because the direct appeal has since been resolved, [Docket No. 748], the Court will deny this Motion as moot.

## II. MOTION FOR AN ORDER GRANTING RELIEF

Defendant's Motion for an Order Granting Relief [Docket No. 655] asks the Court to issue a ruling on Defendant's Motion for a New Trial [Docket No. 640]. The Court will issue a ruling on the Motion for a New Trial in due time. Because the Motion for an Order Granting Relief is duplicative of the Motion for a New Trial, the Court will dismiss the former.

## III. MOTION TO RECONSIDER

Defendant's Motion to Reconsider [Docket No. 687] asks the Court to reconsider its July 28, 2020 Order [Docket No. 676] denying Defendant's Motion for Recusal [Docket No. 670]. In particular, Defendant argues that the Court should recuse itself from this matter because it "exhibited . . . patent bias against" Defendant during the sentencing of Defendant's wife and co-defendant, Jazmin Vega. [Docket No. 676.] Because the Court finds that any bias Defendant alleges the Court exhibited toward

2

Defendant does not meet the standard requiring recusal, the Court will deny Defendant's Motion to Reconsider.

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and Local Civil Rule 7.1(i), a motion for reconsideration must be based on one of three grounds: (1) an intervening change in controlling law, (2) new evidence not previously available, or (3) a clear error of law or manifest injustice. N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995).

The Third Circuit has held that the purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). However, the "extraordinary remedy" of reconsideration is "to be granted sparingly." A.K. Stamping Co., Inc. v. Instrument Specialties Co., Inc., 106 F. Supp. 2d 627, 662 (D.N.J. 2000) (quoting NL Indus. Inc., v. Commercial Union Ins. Co., 935 F. Supp. 513, 516 (D.N.J. 1996)). A motion for reconsideration may be granted only if there is a dispositive factual or legal matter that was presented but not considered that would have reasonably resulted in a different conclusion by the court. White v. City of Trenton, 848 F. Supp. 2d 497, 500 (D.N.J. 2012). Mere disagreement with a court's decision should be raised through the appellate process and is thus inappropriate on a motion for reconsideration. United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999).

Defendant's Motion is proper insofar as the Court did not address his bias argument in its earlier Order. [See Docket No. 670.] However, even considering that argument, recusal is not required here. Under 28 U.S.C. § 455,

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned.
>
> (b) [She] should also disqualify [herself] in the following circumstances:
>
>> (1) Where [she] has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . .

Beliefs or opinions that merit recusal must generally involve an extrajudicial factor rather than "facts which the judge has learned from [her] participation in the case." United States v. Rosenberg, 806 F.2d 1169, 1173 (3d Cir. 1986); accord United States v. Antar, 53 F.3d 568, 573 (3d Cir. 1995), overruled on other grounds by Smith v. Berg, 247 F.3d 532, 538 (3d Cir. 2001) (citing Liteky v. United States, 510 U.S. 540, 555 (1994)). If the alleged bias stems from facts obtained during judicial proceedings, however, the Third Circuit has instructed that the alleged bias "must be particularly strong in order to merit recusal." Antar, 53 F.3d at 574. "The court must reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." In

re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 343 (3d Cir. 1998). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky, 510 U.S. at 555.

Here, Defendant points to three examples — all of which occurred during Vega's sentencing on November 14, 2019 — of alleged bias that require the Court's recusal. First, the Court repeatedly utilized the analogy of "hitting the delete button," in reference to Vega's need to remove Defendant from her life. [See Case No. 14-699-11, Docket No. 630, at 31, 51.] Second, the Court indicated that Defendant was "no good for" Vega. [Id.] Finally, the Court alluded to the "evilness" of Defendant's actions towards Vega. [Id. at 60-61.]

As the record demonstrates, the Court stated all of these things based exclusively on information provided to it during the sentencing hearing in question. [See id.] In that hearing, Vega, through her counsel, repeatedly described the awful way Defendant treated Vega in their marriage as "psychological warfare," which included allegations of both emotional and physical abuse. [See, e.g., id. at 7-10.] His own wife's counsel described Defendant's "psychological control" over Vega, whom Defendant allegedly told

5

"what to do all the time and [made to] . . . do certain things." [Id. at 8.] Counsel further alleged that Vega had wanted to plead guilty to her criminal charges, thus minimizing her sentencing exposure, but instead "was basically forced to [go to] trial" by Defendant. [Id. at 7.] As a result of Defendant's "psychological warfare" against Vega, her attorney argued, she faced a longer time in jail.

Vega's Goddaughter spoke in support of Vega at her sentencing and said, among other things, that "life is not like a keyboard, you just can't hit delete." [Id. at 45-46.] The Court later addressed Vega directly and applied that metaphor to her relationship with Defendant: "I think it's well said by a 22-year-old that life isn't a keyboard, but when are you going to hit delete?" [Id. at 51.][1]

The Court then lamented the fact that Defendant, even though he had already been sentenced and was in prison, was "still . . . controlling" Vega, whom he had "manipulated . . . from the time she was 16." [Id. at 59-60.] In the context of discussing this manipulative behavior and how it has negatively impacted Vega, the

---

[1] The Court clarified that, in suggesting that Vega "hit delete," it meant no longer permitting Defendant to entangle Vega in his criminal activities and other forms of control and manipulation. The Court was careful to explicitly state that it was not advocating for divorce, for instance: "I don't mean legally divorce, what I mean is just get away from him and his control and his manipulation and his evilness." [Case No. 14-699-11, Docket No. 630, at 60.]

6

Court encouraged Vega to make an effort to "just get away from him and his control and his manipulation and his evilness." [Id. at 60.] The Court later summarized how Defendant's behavior towards Vega had been characterized: "[T]here is something that has kept her under his yoke. And that's why I say to her, and it's unfortunate, and that's why I say to her as a human you need to deal with that because he's evil and he has used you and he has manipulated you." [Id. at 61.]

The Court's use of the language Defendant now takes issue with was limited in scope to discussing Defendant's actions toward his wife as described to the Court at Vega's sentencing by her own counsel. It is crucial to note that Defendant has never set foot in this Court's courtroom, nor has this Court ever met Defendant, as his sentencing was handled by the late Honorable Jerome B. Simandle. The language the Court used at Vega's sentencing was not describing Defendant on the whole, but rather his manipulation of Vega and the impact he had on her life. While the Court appreciates that it would have been more articulate to explicitly state that Defendant's conduct was "evil," in the context of the hearing at which these remarks were made, it was obvious that Defendant's conduct was the focus.

Additionally, it is important to note that this occurred at Vega's sentencing, after Defendant had already been sentenced by Judge Simandle. Defendant offers no evidence to show that the

7

Court's comments at Vega's sentencing in any way resulted in antagonism or favoritism in how the Court treated, and continues to treat, Defendant in his own case.

The Court heard example after example of how Vega suffered at the hands of Defendant. Vega's counsel suggested that she might suffer from battered woman syndrome, considering how Defendant was "telling [her] what to do all the time and making [her] do certain things, then telling [her] what we're doing is legit." [Case No. 14-699-11, Docket No. 630, at 8.] Counsel explained that Defendant's hold on Vega was so strong that "[s]he was basically forced to trial from [Defendant] and he's in a jail cell. So what kind of psychological effect does somebody who is in FDC Philadelphia have on you when you can't even say okay, I'll take the deal, which we had years ago?" [Id. at 7.]

Before sentencing Vega, the Court remarked,

> It's a sad day. I wish you had learned your lesson long ago. I wish you hadn't, and I know you wish the same, ever said yes to [Defendant]. But you are going to have to muster up the courage and the strength to say no, it's done, because you paid a big price for him.

[Id. at 69.] It is clear that the Court was ultimately persuaded by counsel that Vega deserved mercy and compassion due in large part to how Defendant had taken advantage of and manipulated her, and as a result it sentenced Vega to the lowest end of the applicable Guideline range. [Id. at 70.]

8

In sum, the opinions expressed by the Court at Vega's sentencing were "formed by the judge on the basis of facts introduced or events occurring in the course of . . . proceedings" at which Defendant's wife and her lawyer were the primary describers of Defendant's harmful conduct, including his "psychological warfare" against his wife. See Liteky, 510 U.S. at 555. Those opinions, while harsh, were about Defendant's actions toward Vega and in no way "display a deep-seated favoritism or antagonism that would make fair judgment impossible." Id. Moreover, as noted before, this Court has never even met Defendant and he has never appeared before this Court. Based on the testimony and argument at Vega's sentencing, the Court was in no position to characterize Defendant on the whole. Rather, its characterization, like the testimony and argument presented at Vega's sentencing, was limited solely to Defendant's actions toward Vega, whom he allegedly manipulated and abused.

In short, the standard required for recusal has not been met here, even considering the language from Vega's sentencing with which Defendant takes issue. Therefore, the Court will deny Defendant's Motion to Reconsider.

**IV. MOTION TO DISQUALIFY**

Defendant's Motion to Disqualify offers two arguments as to why Assistant United States Attorney Diana Carrig and the United States Attorney's Office (the "Government") should be disqualified

9

from prosecuting this case. [See Docket No. 699.] First, Defendant argues that the Government inappropriately came into possession of a package that was addressed to Vega. [See id. at 1-2.] The Court will reserve judgment on this issue for the time being.

Second, Defendant argues that the Government has had inappropriate, ex parte communications and has engaged in fraudulent behavior in its efforts to sell a particular property that is owned by Defendant and another of his co-defendants, Amanda Tutis. [Id. at 3-4.] However, such actions by the Government were necessary to carry out the Court's previous Order that explicitly called for the sale of the property in question, among others. [See Docket No. 601.] Therefore, this aspect of Defendant's Motion will be denied.

## V. CONCLUSION

For the reasons expressed above, the Court will (1) deny as moot Defendant's Motion to Stay [Docket No. 616]; (2) dismiss Defendant's Motion for an Order Granting Relief [Docket No. 655]; (3) deny Defendant's Motion to Reconsider [Docket No. 687]; and (4) deny, in part, and reserve judgment on, in part, Defendant's Motion to Disqualify [Docket No. 699]. An accompanying Order shall issue.

| | |
|---|---|
| April 27, 2021 | s/Renée Marie Bumb |
| Date | RENÉE MARIE BUMB |
| | United States District Judge |

10