NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 19-2106 and 19-2380
_____

UNITED STATES OF AMERICA, Appellant in 19-2380

v.

TOYE TUTIS, a/k/a "AHMAD",
a/k/a "MAHD", a/k/a "SANTANA", Appellant in 19-2106
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-14-cr-00699-001)
District Judge: Honorable Jerome B. Simandle
_____

Argued on December 9, 2020

Before: MCKEE, PORTER and FISHER, *Circuit Judges*.

(Filed: February 11, 2021)

Stanley O. King  *[ARGUED]*
King & King
231 South Broad Street
Woodbury, NJ 08096
    *Counsel for Appellant/Cross-Appellee*

Craig Carpenito, United States Attorney
Sabrina G. Comizzoli, Assistant U.S. Attorney  *[ARGUED]*
Mark E. Coyne
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ 07102
    *Counsel for Appellee/Cross-Appellant*

_____

OPINION[*]

_____

FISHER, *Circuit Judge*.

Toye Tutis pleaded guilty to drug possession and distribution and money laundering, but reserved his right to appeal two issues. He now exercises that right, arguing that the District Court erred in denying his motions to suppress evidence and to withdraw his guilty plea. We will affirm.[1]

Tutis first argues that the District Court erred in denying his motions to suppress evidence from a roving wiretap because the affidavit supporting the wiretap order did not provide probable cause. He contends that the affidavit contained only barebones,

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. For the denial of a motion to suppress evidence, we review factual determinations for clear error and exercise plenary review over the application of the law to those facts. *United States v. Murray*, 821 F. 3d 386, 390-91 (3d Cir. 2016). For the denial of a motion to withdraw a guilty plea, we review for abuse of discretion. *United States v. Siddons*, 660 F.3d 699, 703 (3d Cir. 2011).

conclusory, and deliberately misleading information.[2]

"When faced with a challenge to a . . . probable cause determination, a reviewing court must remember that its role is limited"[3] and afford "great deference"[4] to the issuing court's findings. Thus, we "confine our review to . . . the affidavit" and look to see if there was a "'substantial basis' for finding probable cause" from its contents.[5] The test is met if, taking "a practical, common-sense" view of the facts, "there is a fair probability that . . . evidence of a crime will be found in a particular place."[6] Additionally, a roving wiretap, which allows the government to "intercept[] any and all identified telephones used" by an individual,[7] may be authorized if the affidavit includes evidence of that person "thwarting interception" by law enforcement.[8]

Here, the District Court concluded that the affidavit contained sufficient facts to establish probable cause for a roving wiretap. We agree. The affidavit indicated that Tutis, his wife, and his brother were subjects of a long-term, state and federal

---

[2] Tutis argues that the affidavit also fails because it does not meet New Jersey's stricter standard for roving wiretaps. *See State v. Feliciano*, 132 A.3d 1245, 1256 (N.J. 2016) (explaining that New Jersey's standard is "stricter" than the federal one because the government must "show the target has a 'purpose . . . to thwart interception'" (citing N.J.S.A. 2A:156A-9(g)(2)(b))). We have, however, held that federal law governs admissibility of communications intercepted by state agents in federal cases. *United States v. Williams*, 124 F.3d 411, 426-28 (3d Cir. 1997).

[3] *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993).
[4] *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001).
[5] *Jones*, 994 F.2d at 1054, 1055.
[6] *Illinois v. Gates*, 462 U.S. 213, 238 (1983).
[7] *United States v. Shannon*, 766 F.3d 346, 349 n.4 (3d Cir. 2014).
[8] 18 U.S.C. § 2518(11)(b)(ii).

investigation into multiple drug trafficking rings in New Jersey. It also recounted tips from a confidential informant such as instructions, that were provided by Tutis, to use code words to refer to specific drugs. The affidavit further described a subsequent investigation based on those tips, including multiple controlled drug purchases, one of which occurred in Tutis's presence.[9] The affidavit also averred that Tutis obtained fraudulent state-issued identifications and used multiple phones to avoid interception by the police. While it is true that the affidavit was later found to have included some false information, the District Court found that it was not knowingly and deliberately included.[10] Even excluding the affidavit's incorrect assertion that "Santana" was Tutis's nickname, the remaining facts in the affidavit still established probable cause.[11]

Next, Tutis argues that the District Court wrongly denied his motion to suppress evidence obtained through a cell-site simulator, arguing it exceeded the warrant's scope because the affidavit referred to the simulator only as "equipment" instead of specifically listing it. A search warrant complies with the Fourth Amendment when a neutral

---

[9] *See United States v. Stearn*, 597 F.3d 540, 555 (3d Cir. 2010) (finding that "[a] magistrate may issue a warrant relying primarily . . . upon the statements of a confidential informant, so long as" there is "independent '[police] corroboration of details of an informant's tip'" (quoting *Gates*, 462 U.S. at 241) (alteration in original)).

[10] *See Franks v. Delaware,* 438 U.S. 154, 171 (1978) (to obtain an evidentiary hearing and ultimately exclude evidence obtained under a warrant issued based on a false affidavit, "[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth").

[11] *See United States v. Yusuf*, 461 F.3d 374, 384 (3d Cir. 2006) ("When faced with an affirmative misrepresentation, the court is required to excise the false statement from the affidavit" and then assess probable cause.).

magistrate finds in the affiant's application: (1) "probable cause to believe that the evidence sought will aid in a particular apprehension" and particular descriptions of "the things to be seized, as well as the place to be searched."[12] The affidavit here did just that. It described where the equipment would search and what it would obtain. Based on physical surveillance of Tutis, the officers would use the equipment in "close proximity" to Tutis "at different geographical locations."[13] It would then obtain "Electronic Serial Number (ESN), Mobile Telephone Number (MSISSDN), and International Mobile Subscriber Identification (IMSI)" to "ascertain the [additional cellular telephone] facility or facilities" utilized by Tutis.[14] Indeed, it described the equipment in detail despite not actually naming it, stating that it "is capable of retrieving wireless instrument identification information" and would be used "to identify additional telephone facility numbers being utilized by" Tutis.[15] Therefore, the government's search did not exceed the scope of the warrant.

Furthermore, Tutis disputes the legitimacy of his own guilty plea, which he tried to withdraw twice. A defendant may withdraw a plea if he can demonstrate a "fair and just reason for . . . withdrawal,"[16] which is a "substantial burden."[17] In determining if a

---

[12] *Dalia v. United States*, 441 U.S. 238, 255 (1979) (internal quotation marks omitted).
[13] Appellant's Brief at 38.
[14] *Id.* at 37.
[15] *Id*. at 38-39.
[16] Fed. R. Crim. P. 11(d)(2)(B).
[17] *Siddons*, 660 F.3d at 703.

5

fair and just reason exists, "a district court must consider whether: (1) the defendant asserts his innocence; (2) the defendant proffered strong reasons justifying the withdrawal; and (3) the government would be prejudiced by the withdrawal."[18]

In his first motion, Tutis contended that his plea was involuntary because he only agreed to it "based on pressure stemming from the packaged nature of his and his wife's plea offers."[19] For the first factor of the test for withdrawing a plea, asserting innocence, Tutis provided no facts to support his general statement that he continued to maintain his innocence. A "[b]ald assertion of innocence is . . . insufficient to permit [a defendant] to withdraw his guilty plea."[20]

For the second factor, Tutis argues there are strong reasons to withdraw his plea because he did not know it was uncoupled from his wife's plea deal. He contends that initial plea negotiations involved a packaged deal and his attorney did not inform him that, in the end, the pleas were not packaged. Additionally, Tutis argues that the District Court failed to conduct the special colloquy that is required for packaged pleas.[21] However, the District Court found that Tutis's and his wife's agreements had no

---

[18] *Id.* (internal quotation marks and citations omitted).
[19] Appellant's Brief at 42-43.
[20] *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005).
[21] We require that package deals be disclosed to the district court, and that the district court conduct a special colloquy, because package deals "pose special risks, particularly when a trial court is unaware that defendants' pleas are tied together." *United States v. Hodge*, 412 F.3d 479, 489-90 (3d Cir. 2005).

"coupling language," were "entered independently," and "were indeed uncoupled."[22] Our review of the plea agreement confirms that the District Court did not err on this point. Tutis also "affirm[ed] . . . that his decision to accept the government's plea bargain was voluntary, entered of his own free will, and not coerced," and the District Court confirmed him to be "an intelligent, articulate, and self-directed person" who was actively involved in negotiating plea offers.[23]

Nor does our decision change because Tutis's lawyer subsequently testified that he decided not to inform the District Court about the packaged deal in order "to inject . . . error in the Court's plea hearing so that it could serve as a basis for setting his plea aside."[24] The District Court found the lawyer to be incredible, "uneasy" on the witness stand, and trying hard "to keep his 'story' straight."[25] Additionally, Tutis's wife's attorney testified that he knew that the pleas were ultimately uncoupled and that Tutis's lawyer should have known as well.

As for the final factor for withdrawing a plea, the District Court did not find the Government would have been prejudiced by withdrawal. However, this third factor does not outweigh the first two, which Tutis failed to demonstrate. Thus, the District Court did

---

[22] JA 83-84. Moreover, even if Tutis's plea deal had been packaged together with his wife's, a packaged-plea colloquy was never triggered because neither party informed the District Court there was a package deal. *See Hodge*, 412 F.3d at 489-90.
[23] JA 85, 102.
[24] JA 109, 986.
[25] JA 111.

not abuse its discretion when it concluded that Tutis did not establish a fair and just reason to withdraw his plea.

In his second motion to withdraw his plea, Tutis argued the plea was involuntary due to ineffective assistance of counsel. Although we typically do not evaluate claims of ineffective assistance of counsel on direct appeal, "a narrow exception to the rule . . . exists '[w]here the record is sufficient to allow'" it.[26] Because the District Court held a hearing and "created an adequate record," we will proceed.[27] Accordingly, Tutis must demonstrate that (1) "his attorney's advice was under all the circumstances unreasonable under prevailing professional norms; and (2) . . . he suffered sufficient prejudice from his counsel's errors."[28] He satisfies the latter by proving that "he would not have pleaded guilty and would have insisted on going to trial" but for his attorney's errors.[29]

As with his first motion to withdraw, Tutis maintains that he entered his plea involuntarily because his counsel misled him into believing that he had a packaged deal with his wife. The District Court, however, found that Tutis's lawyer "attempted to manufacture an ineffective assistance of counsel claim in a corrupt post-plea attempt to help his former client"[30] and that Tutis's contention that he falsely admitted to his guilt

---

[26] *United States v. Jones*, 336 F.3d 245, 254 (3d Cir. 2003) (quoting *United States v. Headley*, 923 F.2d 1079, 1083 (3d Cir. 1991)).
[27] *Id.*
[28] *Id.* at 253-54 (internal quotation marks and citations omitted).
[29] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).
[30] JA 143.

8

was unbelievable. There was no indication that Tutis would have gone to trial if he had not pleaded guilty, much less that he was prejudiced by his lawyer's alleged errors.

Lastly, Tutis indicated his intention to file a pro se appellate brief, and in response, the Government filed a cross-appeal. Apparently, the Government was attempting to prepare for the possibility that Tutis would raise issues on appeal other than the ones reserved in his plea agreement, and thus would violate the agreement. However, the Government should not have cross-appealed.[31] To put it succinctly, the Government was not aggrieved by the judgment and is not permitted to appeal it.[32] Therefore, we dismiss the cross-appeal.

---

[31] *United States v. Erwin*, 765 F.3d 219, 234-35 (3d Cir. 2014) (where defendant violates terms of plea agreement by raising issues not reserved in the agreement, no cross-appeal is permitted or needed and this Court has the power to order appropriate remedies, including de novo resentencing).

[32] *Id.* at 232.

For these reasons, we will affirm.[33]

---

[33] Judge McKee does not agree that the affidavit contained sufficient assertions to establish probable cause for a roving wiretap. The assertions that would establish probable cause in the affidavit all stem from the informant, but they establish probable cause only if the informant is shown to be reliable under *Gates*. 462 U.S. at 239. Judge McKee does not believe that the affidavit establishes that the informant is reliable as to Tutis. In his view, the affiant merely asserts that the informant is reliable without establishing what that conclusion is based upon. It alleges only that physical surveillance has been conducted, primarily of the narcotics transactions conducted with the reliable confidential informant. The language about the informant's reliability is conclusory and similar to the language that was held inadequate in *Gates*. There, the affidavit stated only that the affiant "[has] received reliable information from a credible person . . . " *Gates*, 462 U.S. at 239. Here, as in *Gates*, such an assertion is a "mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause. *Id*.

Judge McKee notes that the affiant does state that he had relied upon the informant in a prior investigation of Tutis. However, that investigation was fruitless. In this investigation, the informant's tips about drug activity were corroborated only as to Tutis's brother, but not as to the appellant himself. Accordingly, Judge McKee would hold that the affidavit in support of the September 26, 2014 roving wiretap order lacked probable cause and that evidence derived from that wiretap should therefore be suppressed as the "fruit of the poisonous tree." *Wong Sun. v. United States*, 371 U.S. 471 (1963).