[Docket Nos. 806, 816, 829, 831, 848]

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 14-cr-699 |
| v. | **OPINION ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A)** |
| TOYE TUTIS | (COMPASSIONATE RELEASE) |

Upon motion of ☑ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission, **IT IS ORDERED** that the motion is:

☐ GRANTED

☐ The defendant's previously imposed sentence of imprisonment of _____ is reduced to_____. If this sentence is less than the amount of time the defendant already served, the sentence is reduced to a time served; or

☐ Time served.

If the defendant's sentence is reduced to time served:

☐       This order is stayed for up to fourteen days, for the verification of the defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure the defendant's safe release. The defendant shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made,

and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, the parties shall immediately notify the court and show cause why the stay should be extended; or

☐     There being a verified residence and an appropriate release plan in place, this order is stayed for up to fourteen days to make appropriate travel arrangements and to ensure the defendant's safe release. The defendant shall be released as soon as appropriate travel arrangements are made and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, then the parties shall immediately notify the court and show cause why the stay should be extended.

☐ The defendant must provide the complete address where the defendant will reside upon release to the probation office in the district where they will be released because it was not included in the motion for sentence reduction.

☐ Under 18 U.S.C. § 3582(c)(1)(A), the defendant is ordered to serve a "special term" of ☐ probation or ☐ supervised release of____months (not to exceed the unserved portion of the original term of imprisonment).

☐ The defendant's previously imposed conditions of supervised release apply to the "special term" of supervision; or

☐ The conditions of the "special term" of supervision are as follows:

_____

_____

_____

_____

☐ The defendant's previously imposed conditions of supervised release are
unchanged.

☐ The defendant's previously imposed conditions of supervised release are

modified as follows:

_____

_____

_____

_____

_____

_____

_____

_____

_____

☐ DEFERRED pending supplemental briefing and/or a hearing. The court DIRECTS

the United States Attorney to file a response on or before_____,  along  with  all

Bureau  of  Prisons  records  (medical,  institutional,  administrative)  relevant  to  this

motion.

☑ **DENIED** after complete review of the motion on the merits.

☑ **FACTORS CONSIDERED** (Optional)

Under 18 U.S.C. § 3582(c)(1)(A), a court may exercise its discretion and grant a
defendant's motion to reduce his term of imprisonment if it finds that "extraordinary and
compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable
policy statements issued by the Sentencing Commission." Relevant here, a defendant may show
extraordinary and compelling reasons for release based on a medical condition where (1) "[t]he

defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," or (2) he or she is "(I) suffering from a serious physical or medical condition, (II) suffering from a serious function or cognitive impairment, or (III) experiencing deteriorating physical or mental health because that of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, Application Note 1; *see United States v. Epstein*, Crim. No. 14-2871, 2020 WL 2537648, at *3, at *7-8 (D.N.J. May 18, 2020). Once a court finds that "extraordinary and compelling reasons" are present, a court must still consider whether the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, weigh in favor of a defendant's release. 18 U.S.C. § 3582(c)(1)(A); *see, e.g.*, *United States v. Pawlowski*, 967 F.3d 327, 329-30 (3d Cir. 2020). Relevant here, "the Court must conduct a highly individualized inquiry of [the] Defendant to determine whether COVID-19 in conjunction with his alleged underlying medical conditions constitutes an extraordinary and compelling reason for release." *United States v. Catanzarite*, No. CR 18-0362, 2020 WL 2786927, at *3 (D.N.J. May 29, 2020).

A long series of correspondence prepared by Defendant himself has been filed with the Court regarding his pending motion for compassionate release. [Docket Nos. 806, 816, 827, 829, 843, 844, 845, 848.] Also, Defendant's CJA appointed counsel has now filed a formal motion and brief on Defendant's behalf regarding same. [Docket No. 831, 831-1.] Defendant argues that compassionate release is warranted because he remains unvaccinated against COVID-19 and BOP has made "no attempt … to separate vaccinated prisoners from the unvaccinated" at the Gilmer FCI located in Glenville, West Virginia where he is currently housed. [Docket No. 816, at 2.] Plaintiff is 49 years old and suffers from pulmonary diseases (including bronchitis) for which he experiences wheezing, shortness of breath, and uses a CPAP machine for sleep apnea. [Docket No. 831 ¶ 4.] Plaintiff is 6'1," weighs approximately 350 pounds, is borderline diabetic, and has a history of ear infections. [*Id.* ¶ 5.] Defendant urges the Court to consider all exhibits appended to his various filings related to his compassionate release request and provided certain articles criticizing the Government's response to COVID-19 in prisons. [Docket No. 806.] Defendant also cites statistics from the Center for Disease Control that incarcerated individuals are more likely to contract COVID-19, and that the Gilmer FCI has continued to impose quarantine orders, illuminating the continued health risk caused by the disease. [Docket No. 816, at 1–3.] Defendant also argues that compassionate release is warranted because other courts have granted like motions during the COVID-19 pandemic for certain other criminal defendants and given that those previously infected with COVID-19 can still become reinfected. [*Id.* at 4–5.] Defendant acknowledges that District Courts have wide latitude to determine what constitutes an extraordinary and compelling circumstance to warrant compassionate relief, but nonetheless urges the Court to "reduc[e] his sentence to time-served" because of the "combination of [his] health problems, BOP's failure to provide adequate medical treatment for those issues, his obesity, and

4

the changes made to the drug offense sentences."[1] [*Id.* at 7.] Defendant's counseled brief argues that compassionate release is warranted because "Defendant has demonstrated that he suffers from a variety of medical conditions, is not receiving adequate medical care in prison, is a nonviolent offender, and has good prospect to avoid recidivism upon release." [Docket No. 131-1, at 4.]

Consistent with this Court's Order on May 4, 2022, requiring "a non-Camden AUSA to draft and file the Government's response(s),"[2] the Government filed a supplemental response to Defendant's motion. [Docket No. 841.] In response, the Government makes three main arguments. First, that "a COVID-19 vaccine is readily available to Defendant whenever he wants one," and that Defendant should not be permitted to "complain about the risks of COVID-19 yet studiously avoid taking steps to mitigate those risks." [*Id.* at 2.] Second, based on Defendant's counseled submission, that the argument made by Defendant is that he is "not receiving adequate medical care as a general matter." [*Id.* at 3.] The Government contends that this is a separate and distinct concern from compassionate release and that "the compassionate release statue is not the proper vehicle" to address this more general concern. [*Id.*] Finally, that the number of presently infected inmates and staff at FCI Gilmer is not significant and weigh in favor of denying the motion. [*Id.*] As of the date of this Opinion, no staff and only one inmate was positive for the virus. *See*, BOP, https://www.bop.gov/coronavirus/covid19_statistics.html (last visited April 12, 2023).

Here, the Court agrees with the Government's position.  Low and stable numbers of infected inmates and staff at Gilmer FCI do, in fact, weigh against Defendant's motion for compassionate release.  While the Court is sympathetic to Defendant's concerns related to the COVID-19 pandemic,[3] Defendant has not demonstrated sufficient support for his extraordinary and compelling reasons for compassionate release.  The Court acknowledges that Defendant is correct—individuals who are "extremely obese" are at increased risk for severe illness should they contract COVID-19.  [Docket No. 131-1, at 2 (citations omitted).]  However, Defendant has failed to provide the Court with any medical records, affidavits, or other evidence on which it can rely to find a reasonable basis for his early release.  There is simply no medical indication that infection will put Defendant himself at greater risk.  Defendant's counsel proffers that the fact that

---

[1] Defendant cites the Third Circuit's recent precedential decision in *United States v. Perez*, 5 F.4th 390 (3d Cir. 2021). There, the Circuit held that the Sentencing Commission's Commentary to Section 2K2.1(b)(6)(B), which provides for enhancement when a firearm is used or possessed in connection with another felony offense "if the firearm … facilitated, or had the potential of facilitating, another felony offense." *Id.* at 394 (citations omitted). The Circuit held that the commentary "creates a rebuttable presumption that the enhancement should apply for a drug-trafficking offense when a firearm is found in close proximity to drugs or related items." *Id.* at 400. In any event, *Perez* is not applicable to the Court's analysis of the pending motion.

[2] The Court imposed this requirement "out of an abundance of caution, and to obviate the need to address Defendant's allegations that [AUSA] Diana Carrig improperly accessed privileged information regarding Defendant's case." [Docket No. 820.]

[3] Although the Court notes that President Biden terminated the national emergency related to the COVID-19 pandemic on April 10, 2023. *See*, Statement from The White House (https://www.whitehouse.gov/briefing-room/legislation/2023/04/10/bill-signed-h-j-res-7/) (last visited April 12, 2023).

Defendant "suffered hearing loss after an ear infection, while incarcerated, indicates that the BOP is not adequately managing Defendant's care." [*Id.* at 3.] However, there is no medical evidence that establishes what care he received or how it was inadequate. Accordingly, the Court does not find that Defendant has provided sufficient factual support to warrant his early release. In any event, the Court agrees with the Government that the issue of whether Defendant's ear infection was adequately treated is not sufficient to resolving whether he has a medical condition serious enough to warrant compassionate relief. Defendant even concedes that his "ear complications do not increase his risk of contracting COVID-19." [Docket No. 831-1, at 3.] More importantly, Defendant's continued refusal to be vaccinated against COVID-19 undermines his motion based upon fear of infection.

Notwithstanding the Court's finding that Defendant has failed to present extraordinary and compelling reasons for compassionate release, the Court will nonetheless weigh the factors set forth 18 U.S.C. § 3553(a), including the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct; [and]
>>
>> (C) to protect the public from further crimes of the defendant; ... [and]
>
> (4) the sentencing range established for[ ] the applicable category of offense.

18 U.S.C. § 3553(a).

The Court finds that not only has Defendant failed to provide evidence establishing a serious threat to his safety based on objective medical evidence, but also that consideration of the above § 3553(a) factors weigh sharply in favor of denying his motion for compassionate release. First, as to the nature and circumstances of the offense and the history and characteristics of the defendant, the Court finds that this factor weighs against Defendant's release. 18 U.S.C. § 3553(a)(1). As explained by the Government in responding to an earlier motion by Defendant for compassionate release, Defendant's crimes were serious to say the least. [Docket No. 768, at 6.] Defendant operated a large-scale drug trafficking operation supplied by the Mexican Sinaloa cartel that distributed large volumes of heroin and cocaine (more than 150 but less than 250 kilograms of cocaine and 26 kilograms of heroin) throughout southern New Jersey. [*Id.*] Defendant also unlawfully possessed three loaded firearms, a taser, and a bulletproof vest, and engaged in money laundering in connection with the proceeds from drug trafficking. [*Id.* at 6–7.]

The Court finds that Defendant's history and characteristics also weigh against release. Defendant is a career offender and lifelong drug dealer with five felony drug convictions. [*Id.* at 7.] Further, the Court finds that there is a significant need for deterrence in this case, as well as to protect the public given Defendant's criminal history dealing drugs in the community. Finally, the guideline range for Defendant's offense was 360 months to life imprisonment (although the Government agreed not to seek a sentence greater than 330 months). Judge Simandle already granted Defendant a downward variance from the guidelines and sentenced him to 264 months imprisonment. [Docket No. 584.]  More importantly, Defendant has served less than half of his sentence, or approximately 101 months to date, and with good-time credit has a projected release date of December 13, 2033.  Releasing Defendant more than ten years early, given his criminal history and the circumstances surrounding his most recent offense, would undermine the intended purpose of deterring such conduct and criminal behavior.  Accordingly, this factor weighs against Defendant's release.

In that regard, the Court finds that because the sentence imposed is necessary to reflect the seriousness of the offense, criminal history of Defendant, to deter future criminal conduct, and to protect the public from further crimes, Defendant's release is not warranted.

For the foregoing reasons, Defendant's Motion for Compassionate Release [Docket Nos. 806, 816, 829, 831, 848] is **DENIED**. An accompanying Order of today's date shall issue.


April 12, 2023                                     s/Renée Marie Bumb
Date                                                    Renée Marie Bumb
                                                           U.S. Chief District Judge

7